STATE v. EUGENE SEELYE.

209 N. W. 2d 918.

July 20, 1973—No. 43352.

C. *Paul Jones,* State Public Defender, and *C. L. Snoeyenbos,* Assistant State Public Defender, for appellant.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Kenneth E. Raschke, Jr.,* Special Assistant Attorney General, for respondent.

PER CURIAM.

Defendant, convicted by a district court jury of three counts of aggravated robbery, Minn. St. 609.245, appeals from the judgment of conviction. We affirm.

Defendant's first contention, that the police violated his Fourth Amendment rights, has no merit. In the early morning hours of December 11, 1970, in two separate incidents, three men, one armed with a rifle, committed acts of highway robbery against travelers in rural Cass County. At 4:20 a.m., within a few hours after the two incidents, area law-enforcement officials investigating the robberies observed in the general area on the same highway an automobile which matched exactly the description given by two of the victims of the automobile driven by their assailants. When the officers stopped the automobile, they saw two women in the front seat, one of whom got out as they walked toward the automobile, but they could not see into the back seat because the rear side windows were frosted. In order to protect themselves and to secure the situation, the officers opened one of the back doors. Seated on the back seat were defendant and two other males. The officers seized a rifle which they observed in plain sight on the floor and then asked the men to get out and identify themselves. One of the men identified himself as John Lindquist. Significantly, one of the victims of the robberies had reported to police that he overheard one of his assailants call another "John."

On these facts, we have no difficulty in concluding that the police did not violate defendant's Fourth Amendment rights. Adams v. Williams, 407 U. S. 143, 92 S. Ct. 1921, 32 L. ed. 2d 612 (1972), noted in 86 Harv. L. Rev. 171, the most recent Supreme Court stop-and-frisk case, supports our conclusion that the police acted properly when they stopped the suspect vehicle to investigate and when they opened the rear door to see if anyone was in the back seat. The officers had a right to seize the rifle to protect themselves. They also had a right, as part of their investigation, to ask the men to identify themselves. Once they had done all this, they clearly had probable cause to make the arrests that followed.

Defendant also claims that police violated his Fifth Amendment right against compulsory self-incrimination when after arresting him they required him to walk in the snow so that they could compare his footprints with others which they had observed earlier at the alleged scene of one of the robberies. We need not decide this issue for two reasons: First, there was no testimony at trial that these footprints matched any of those found at either robbery site. The testimony at trial was that defendant's shoes, which were properly seized incident to the arrest, had heels which matched heel marks in the snow at the alleged scene of one of the robberies. Second, defendant admitted at trial that the prints found at the alleged scene of the crime were his. Defendant explained that he and his male companions had left their prints at that point not while robbing anyone but when they stopped at the side of the road to relieve themselves. In other words, defendant's real contention was that the alleged crime scene where the police found the prints was not the crime scene at all.

More troublesome is defendant's contention that the trial court erred in admitting defendant's volunteered in-custody statement, which police testified they overheard, that he would be going to St. Cloud for the third time. This testimony put before the jury defendant's prior criminal record. In State v. Olson, 279 Minn. 166, 156 N. W. 2d 89 (1968), we made it clear that it was improper for the prosecution to elicit testimony from one of the state's witnesses that the defendant had admitted involvement in a similar crime on a prior occasion. However, a number of factors distinguish our case: (1) The statement which the police officers related in this case was more than a statement by defendant that he had a prior criminal record; it was also arguably an admission of guilt. (2) More importantly, in our case, defense counsel knew in advance of trial that the state might try to introduce the statement; in Olson, defense counsel did not have reason to anticipate the answer and we therefore excused his failure to object, but here, since defense coun-

sel knew about the statement, we must assume that he deliberately chose not to object, and since defendant took the stand in his own defense, we may assume that defense counsel anticipated that defendant would in any event be disclosing his prior record. (3) Finally, whereas the evidence of guilt in Olson was marginal, the evidence of defendant's guilt is compelling.

Defendant's contention that the prosecution improperly elicited from a female defense witness the fact that her husband, from whom she was separated, was in prison deserves only passing mention. We cannot presume that when the prosecutor asked the witness what her husband was doing, he expected her to answer that he was in prison. Our case is thus easily distinguishable from State v. Jones, 277 Minn. 174, 152 N. W. 2d 67 (1967), where the prosecutor deliberately tried to elicit such testimony from a defense witness.

Affirmed.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of submission, took no part in the consideration or decision of this case.